IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

MICHAEL R. HANNAH,

      Petitioner

  VS.

ALEXIS E. L. CHASE, WARDEN,

      Respondent

NO. 3:07-CV-20 (CDL)

PROCEEDINGS UNDER 28 U.S.C. §2254
BEFORE THE U.S. MAGISTRATE JUDGE

# RECOMMENDATION

Before the court is petition seeking federal habeas corpus relief filed by Michael R. Hannah. Tab #1. He has sued Alexis E. L. Chase alleging seventeen (17) grounds for federal habeas corpus relief. Respondent Chase has filed an answer and an amended answer to the petition. Tab #8 and Tab #11. After careful consideration, the undersigned recommends that this petition be **DENIED**.

### I. Procedural History

Petitioner Hannah was indicted by a Hart County, Georgia grand jury in February of 2001 for the offenses of malice murder and felony murder. At a jury trial in October of 2002, he was found guilty on both counts. He was sentenced to life imprisonment for malice murder; the felony murder conviction was vacated by operation of law.

The petitioner filed a motion for new trial and an amended motion for new trial. The trial court denied the petitioner a new trial in an order dated August 14, 2003. Petitioner then filed a direct appeal in which he enumerated three errors: (1) the circumstantial evidence regarding the cause of death presented by the State was legally insufficient to convict Petitioner of malice murder or felony murder; (2) the trial court committed reversible error by failing to instruct the jury on the principle of accident; and (3) the State's loss or destruction of evidence denied his right to due process and a fair trial.

Upon review of this appeal, the Georgia Supreme Court found the evidence sufficient to enable a rational trier of fact to find the petitioner guilty beyond a reasonable doubt of malice murder, that a jury instruction regarding accident was not supported by the facts, and that the evidence discussed in enumeration of error number three would have been cumulative of other evidence and there was no violation of due process rights. *Hannah v. State*, 278 Ga. 195, 599 S.E.2d 177 (2004). Consequently, the convictions and sentences were affirmed on July 12, 2004.

On May 19, 2005, Petitioner filed a **state** habeas corpus petition, challenging his Hart County convictions. Following an evidentiary hearing held on September 28, 2005, the **state** habeas corpus court denied relief in an order dated July 6, 2006. On January 22, 2007 the Georgia Supreme Court denied the petitioner's application for a certificate of probable cause to appeal. On March 5, 2007, the petitioner filed the instant petition wherein he alleges seventeen grounds for **federal** habeas corpus relief.

## II. Factual Background

The following excerpt contains the facts as found by the Georgia Supreme Court on direct appeal of the petitioner Hannah's criminal case. After review, and for purposes of considering this petition, the facts set forth below are adopted by this court.

> Construed to support the verdict, the evidence showed that Hannah and Rice [the victim] had an intermittent romantic relationship. On the morning of Wednesday, December 13, 2000, Hannah telephoned for an ambulance, stating that he thought Rice had taken a drug overdose. When the first responder arrived at Hannah's house, Rice's skin was blue and cold to the touch. She was not breathing.
>
> Rice's face was severely bruised; bruises were on her lips, under her chin, and around both eyes. A deep injury to her left jaw muscle indicated a significant blow. She was bruised on her left upper arm and under her scalp; there were no significant injuries on her lower body. Her bruises occurred within the three days before her death; the injuries were not consistent with tripping and falling. On Sunday, December 10, 2000, before going to Hannah's house, Rice did not have any bruises on her face.

On Wednesday morning, December 13, 2000, Hannah told investigators that Rice had fallen over a clothes basket on Sunday night and he had put her to bed. Blood matching Rice's was found in the carpet. Two days later, Hannah told investigators that Rice had stayed with him for two days; on Tuesday morning, she fell; he dropped her trying to help her up; he dragged her to bed; she was not communicative; while in bed, she urinated and vomited; he called an employee to come to his house and get the keys to open his bar, but did not say that Rice was there; he found some pills and thought she had taken an overdose; and he did not call an ambulance. When told that the medical examiner concluded that Rice had died of blunt force trauma to the head, Hannah said that: they had an argument; she screamed at him; he thought she was going to steal from him; he hit her once or twice, or perhaps more, with his open hand; she fell as a result of the blows; and she had fallen earlier in the day as he had previously described.

On Tuesday, December 12, 2000, Rice's daughter telephoned for Rice at 7:45 in the morning about taking Rice to a dentist appointment at noon. Hannah said that Rice was sleeping and he would have her telephone her daughter when she woke. At 8:00 that evening, when the daughter called again, Hannah said that Rice was still sleeping.

On Wednesday, December 13, 2000, Hannah told Rice's sister that Rice had committed suicide. Later that same day, he said that the death may have been accidental, and even later that day, he stated to her that Rice had fallen and hit her head "the other night"; he never again mentioned suicide to her.

At trial, Hannah testified that: on Tuesday morning, Rice "came flying" at him, flailing him with "a shoe or something:' he hit her with his open hand three or four times in an attempt to "get her off of [him]"; she then went into a bedroom; she then went outside and smoked, returned to the bedroom, and began packing her clothes; two hours after he struck her, Hannah found Rice on the floor of another room; she said: "everything is spinning"; he tried to lift her off the floor, dropped her, then dragged her to her bedroom; he dropped her twice more attempting to get her into bed, which he finally did; he later found that she had urinated on herself, and he cleaned her; he found a bag containing three prescription bottles with some pills in them and, based on past experiences with Rice, concluded that she had taken some pills and that it would be a considerable time before she woke; he did not call an ambulance because he feared it would result in her getting in trouble for not paying child support; he checked on her Wednesday morning and she began vomiting; he gave her artificial respiration and telephoned for an ambulance.

*Hannah*, 278 Ga. at 195-196.

3

### III. Need for an Evidentiary Hearing

Under the AEDPA, if an applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that: (A) the claim relies on: (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2).

After a review of the file, and in light of the fact statement cited above, the undersigned finds that an evidentiary hearing is not warranted in this case.

### IV. Legal Standards

Pursuant to the provisions of 28 U.S.C. § 2254(d), this court will not grant relief with respect to any claim adjudicated on the merits in state court proceedings unless that adjudication either: (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *Williams v. Taylor*, 529 U.S. 362, 402-13 (2000).

<u>Factual Presumption of Correctness</u>

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

4

## V. Discussion

In his first twelve (12) grounds, petitioner Hannah alleges ineffective assistance of trial and appellate counsel. Specifically, he contends that: (1) counsel failed to object to "jury misconduct" by several of the jurors, in that the jurors failed to follow the trial court's instructions not to talk to anyone about the case or allow anyone to talk to them about the case; (2) counsel failed to object and seek "corrective instructions" regarding alleged prosecutorial misconduct that occurred when the prosecutor made comments and assertions about his own personal beliefs and moral standards, which invited jury nullification; (3) counsel failed to object, move for a mistrial, and request "corrective instructions" regarding alleged prosecutorial misconduct that occurred when the prosecutor referred during closing arguments to facts not in evidence, specifically the use of hands as a deadly weapon; (4) counsel failed to object, move for a mistrial, and request "corrective instructions" regarding alleged prosecutorial misconduct that occurred when the prosecutor commented during closing arguments on his own personal opinion about conflicting testimony and whom the jury should believe; (5) counsel failed to object to the prosecutor's alleged misconduct in making improper comments during closing arguments, specifically the prosecutor's impermissible invocation of his own personal knowledge and/or expertise; (6) counsel failed to conduct proper pre-trial investigation and failed to file pre-trial motions to prevent "irrelevant and prejudicial evidence" from coming in, in violation of his Fifth, Sixth, and Fourteenth Amendment rights; (7) counsel "refused to impeach" GBI Agent Gary Hughes with the information that Agent Hughes had a history of witness tampering; (8) counsel failed to pursue and investigate leads and failed to secure and present witnesses for the defense; (9) counsel failed to secure expert witnesses and/or an investigator; (10) counsel failed to secure medical records and the services of a doctor to show the jury that the petitioner has severe physical limitations and was physically incapable of inflicting the injuries on the victim; (11) counsel failed to object, move to strike, and seek "corrective instructions" when Dr. Falzon, a witness for the State, gave an opinion that went to the ultimate issues in the case and invaded the province of the jury as the trier of fact; and (12) counsel failed to object or raise on appeal that the trial court erred by not charging the jury that the petitioner could not be convicted of both malice murder and felony murder.

In reviewing the above, the undersigned first notes that each of these grounds were raised and adjudicated on the merits in the petitioner's **state** habeas petition. As such, this court will not grant relief with respect to any of these grounds absent a demonstration by the petitioner that the state court's decisions were contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court or were based on an unreasonable determination of the facts in light of the evidence.

With respect to claims of ineffective assistance of counsel, the relevant standard of review has been set forth by the Supreme Court in the case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Therein, the Court explained that before relief can be granted on a claim of ineffective assistance of counsel, a petitioner must satisfy both prongs of a two pronged analysis. The first prong of the analysis requires a demonstration by the petitioner that his counsel's performance fell below an objective standard of reasonableness. The second prong requires the petitioner to show that he suffered prejudice from the alleged deficiencies of his attorney.

As was previously noted, the **state** habeas court reviewed and adjudicated each of the petitioner's claims of ineffective assistance claims on the merits. In so doing, the **state** habeas court correctly identified and properly applied the *Strickland* standard. Having done so, the court found the claims to be without merit. Upon review, the undersigned concludes that the **state** habeas court's decisions as to these claims were not contrary to, nor did they involve an unreasonable application of, Federal Law. Moreover, the undersigned concludes that the decisions were not based on an unreasonable determination of the facts in light of the evidence presented. Consequently, and pursuant to the standards set forth in 28 U.S.C. § 2254(d), the undersigned finds that petitioner Hannah is not entitled to **federal** habeas relief on the ineffective assistance of counsel claims set forth in grounds one through twelve (1-12) of the instant petition.

In his thirteenth ground, petitioner alleges that the evidence regarding the cause of death was legally insufficient to support a conviction for either malice murder or felony murder. In response to this assertion, the respondent contends that the evidence was sufficient, that the Georgia Supreme Court properly denied relief on this ground, and that their finding should be given deference by this court. *Eckman v. Williams*, 151 Fed. Appx. 746 (11th Cir. 2005) (district court should give deference to state appellate court's decision on sufficiency of the evidence claims). The undersigned agrees.

In considering this ground, the Georgia Supreme court identified and employed the standard of review set forth in the case of *Jackson v. Virginia*, 443 U.S. 307 (1979). This standard essentially requires the reviewing court to determine whether or not the evidence presented at trial was sufficient to enable a rational trier of fact to find the criminal defendant guilty beyond a reasonable doubt. Applying this standard to the evidence, the Georgia Supreme Court concluded that the evidence was sufficient to enable a rational trier of fact to find the petitioner guilty beyond a reasonable doubt. *Hannah v. State*, 278 Ga. 195, 197 (2004). In view of the above, and after careful consideration, the undersigned concludes that the state court's decision was not contrary to nor did it involve an unreasonable application of clearly established Federal law. Consequently, the undersigned finds that the petitioner's thirteenth ground is without merit.

In ground fourteen, the petitioner alleges that the trial court committed reversible error by failing to instruct the jury on the principle of accident. In their review of this claim, the Georgia Supreme Court found this ground lacked merit. *Hannah*, 278 Ga. at 197. The undersigned agrees.

As an initial matter, it is clear that this ground fails to allege a violation of "clearly established Federal law" within the meaning of 28 U.S.C. § 2254(d). Consequently, and in view of the fact that this court does not sit "to reexamine state-court determinations of state law," it is clear that this ground fails to sufficiently state a claim for federal habeas corpus relief. See *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Accordingly, the petitioner's fourteenth ground is without merit.

In ground fifteen, the petitioner alleges that the State's loss or destruction of evidence violated his rights to due process and a fair trial. In response to this allegation, the respondent submits that the state appellate court properly denied relief on this ground and that those findings should be given deference by this Court. *Eckman v. Williams*, 151 Fed. Appx. 746 (11th Cir. 2005). The undersigned agrees.

In considering this ground, the Georgia Supreme Court identified and employed the legal standard set forth in the case of *Walker v. State*, 264 Ga. 676(3) (1994). This standard essentially requires reviewing courts to determine whether the evidence was material and whether the [state] acted in bad faith in failing to preserve the evidence.[1] *Id.* According to this standard, in order to be material, the evidence must have had an apparent exculpatory value before it was lost and be of such a nature that the defendant cannot obtain comparable evidence by other reasonable means. *Id.*

Applying this standard to the record on appeal, the Georgia Supreme Court found no evidence of bad faith in the State's failure to produce a bag containing pill bottles which the petitioner claims he produced for the EMT's who responded to his house. *Hannah*, 278 Ga. at 198. In addition, the court observed that a medical examiner testified about the drugs found in the victim's body and that other testimony established the existence of the pill bottles themselves. *Id.* As a result, and in light of their subsequent finding that introduction of the actual pills would have been cumulative, the Georgia Supreme Court concluded that the State's loss or destruction of the bag and its contents did not amount to a violation of the petitioner's due process rights. *Id.*

In view of the above, it is apparent to the undersigned that the state court's decision was not contrary to nor did it involve an unreasonable application of clearly established Federal law. Consequently, the decision is entitled to deference by this court and the undersigned must concludes that the petitioner's fifteenth ground is without merit.

---

[1] This standard is in accord with the one employed by the United States Supreme Court in the case of *Arizona v. Youngblood*, 488 U.S. 51(1988).

In ground sixteen, petitioner Hannah asserts that the state habeas evidentiary process is constitutionally flawed in that the final order was not prepared by the **state** habeas court, but by respondent's counsel. This fact, according to the petitioner, violates his Fourteenth Amendment rights. In ground seventeen, petitioner alleges that the clerk of the **state** habeas court failed to forward the entire designated record on appeal, thus depriving him of a full and fair review on the merits of his **state** habeas claims.

In response to these grounds, the respondent argues that the petitioner's claims do not form a basis for **federal** habeas relief. The undersigned agrees. Because alleged errors in state habeas corpus proceedings do not state grounds for relief in **federal** habeas corpus, the petitioner's sixteenth and seventeenth grounds are without merit. *See Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004).

Accordingly, and for the reasons stated above, **IT IS THE RECOMMENDATION** of the undersigned that the petition of Michael R. Hannah for relief under provisions of 28 U.S.C. § 2254 be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom this case is assigned, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 12th day of FEBRUARY, 2010.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE